**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

SIOUX CITY TRUCK AND TRAILER,
INC.,

        Plaintiff,

vs.

ZIEGLER, INC.,

        Defendant.

No. 16-CV-4106-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.*   *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . *1*

*III.*  *RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . *2*

      *A.*    *Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
      *B.*    *Agreement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
      *C.*    *Dispute* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*IV.*  *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

      *A.*    *Applicable Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
      *B.*    *RPA* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
      *C.*    *State Law Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*

*V.*   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*

*I. INTRODUCTION*

The matter before the court is Defendant Ziegler, Inc.'s ("Ziegler") "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" ("Motion") (docket no. 9).

*II. RELEVANT PROCEDURAL HISTORY*

On July 6, 2016, Plaintiff Sioux City Truck and Trailer, Inc. ("SCTT") filed a Petition (docket no. 3) in the Iowa District Court for Woodbury County alleging three claims against Ziegler: (1) breach of good faith and fair dealing, (2) violation of the

Robinson-Patman Act ("RPA") and (3) violation of Iowa franchise law.[1] On July 27, 2016, Ziegler removed the case pursuant to the court's original federal question jurisdiction over the RPA claim and supplemental jurisdiction over the remaining claims, bringing the Petition before the court. *See* Notice of Removal (docket no. 2). On August 3, 2016, Ziegler filed the Motion. On August 22, 2016, SCTT filed a Resistance (docket no. 14). On August 25, 2016, Ziegler filed a Reply (docket no. 16). Neither party requests oral argument and the court finds that oral argument is unnecessary. The matter is fully submitted and ready for decision.

### III. RELEVANT FACTUAL BACKGROUND

Accepting all factual allegations in the Amended Complaint as true and drawing all reasonable inferences in favor of SCTT, the facts are as follows.

#### A. *Parties*

SCTT is a South Dakota corporation with its principal place of business in Sioux City, Iowa. Petition ¶ 1. Ziegler is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. *Id.* ¶ 2.

#### B. *Agreement*

On or about March 31, 2014, SCTT and Ziegler entered into an "Engine Parts and Service Agreement" ("Agreement"), which granted SCTT the right to buy various CAT brand machinery parts from Ziegler and to service various models of machinery. *Id.* ¶ 3; *see also* Agreement (docket no. 3-1).[2] The Agreement was the most recent in a history of

---

[1] The Petition's prayer for relief includes a request for "a temporary . . . injunction." To the extent that this request seeks a temporary restraining order or preliminary injunction, SCTT has not pursued such relief upon the Petition's removal to this court and the court shall not, therefore, address such request in this Order. *See* July 28, 2016 Order (docket no. 5).

[2] A court considering a 12(b)(6) motion to dismiss may consider the allegations included in the complaint as well as "matters incorporated by reference or integral to the
(continued…)

similar agreements, under which SCTT and Ziegler maintained a contractual relationship since the 1980s. Petition ¶ 4. The Agreement provided for a variety of rights and obligations relating to Ziegler's sale of parts to SCTT—including provisions about purchase price, minimum inventories and the training of SCTT technicians regarding use of the parts when servicing machinery. *See generally* Agreement. The Agreement also permits either party to terminate the Agreement "at any time, with or without cause, upon thirty (30) days written notice mailed to the other party." Agreement ¶ 21. By its terms, the Agreement contemplated expiration after one year. *See* Agreement ¶ 32.

## C. Dispute

On February 16, 2016, Ziegler emailed SCTT to negotiate a new agreement. Petition ¶ 6. Ziegler's proposed new agreement would reclassify SCTT as a "parts dealer," which would amount to a "reduced" role compared to SCTT's "full service" status under the Agreement. *Id*. Under the proposed "parts dealer" agreement, Ziegler would charge SCTT higher prices for parts than it charged under the Agreement. *Id*. ¶ 21. In the email, Ziegler stated that it would terminate its relationship with SCTT if it did not agree to the proposed "parts dealer" agreement. *Id*. ¶ 7. SCTT alleges that none of SCTT's regional competitors saw their rights reduced or terminated by Ziegler and that, unlike SCTT, their previously entered agreements remained in effect. *Id*. ¶ 14. SCTT apparently did not agree to the proposed "parts dealer" agreement. *See generally id*. However, on March 8, 2016, counsel for SCTT sent a letter informing Ziegler that SCTT would cure any perceived performance deficiencies under the Agreement. *Id*. ¶ 8. Ziegler

---

²(…continued)
claim, items subject to judicial notice, and matters of public record." *U.S. ex rel. Kraxberger v. Kan. City Power & Light Co.*, 756 F.3d 1075, 1083 (8th Cir. 2014) (alteration omitted) (quoting *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)). Accordingly, the court shall consider the Agreement because it is both "incorporated by reference" and "integral to the claim."

did not respond to the letter. *Id.* ¶ 9. On May 6, 2016, Ziegler sent a letter to SCTT notifying SCTT that Ziegler was terminating the Agreement, effective thirty days after the date of the letter. *Id.* ¶ 10; *see also* Termination Letter (docket no. 3-2). The termination letter did not include, and Ziegler did not otherwise provide, any notice of cause for its termination of the Agreement. Petition ¶ 12.

## IV. ANALYSIS

In the Motion, Ziegler argues that all three claims in the Petition should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Motion at 1.

### A. Applicable Standard

The Federal Rules of Civil Procedure provide for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. (12)(b)(6). When analyzing a Rule 12(b)(6) motion, the court must accept all of the factual allegations in the complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss [the court] must take all of the factual allegations in the complaint as true."). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 838-39 (8th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). This standard requires a complaint to "contain factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). "Where the allegations show on the face of the complaint [that] there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th

4

Cir. 2008). "Where . . . claims relate to a written contract that is part of the record in the case, [courts] consider the language of the contract when reviewing the sufficiency of the complaint." *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010).

### B. RPA

Because the court's original jurisdiction derives from the federal RPA claim, *see* Notice of Removal, the court begins by addressing that claim.

The RPA makes it unlawful

> for any person engaged in commerce . . . to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States . . . , and where the effect of such discrimination may be substantially to lessen competition . . . .

15 U.S.C. § 13(a). An RPA claim alleging "price discrimination that injures competition among the discriminating seller's customers"—referred to as a secondary line claim—must satisfy the following elements: (1) the seller sold its products in interstate commerce; (2) the products were "of like grade and quality"; (3) the seller discriminated in price between a favored and a disfavored purchaser; and (4) the price discrimination is such that it may injure competition to the advantage of the favored purchaser. *Volvo Trucks N. Am. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176-77 (2006) ("*Reeder-Simco II*"). With respect to the third element, "[a]t least two transactions must take place in order to constitute a [violation of the RPA]." *Bruce's Juices v. American Can Co.*, 330 U.S. 743, 755 (1947) ("*Bruce's Juices I*"). To satisfy this so-called two-purchaser rule, a plaintiff must allege "actual sales at two different prices to two different actual buyers." *Fusco v. Xerox Corp.*, 676 F.2d 332, 335 (8th Cir. 1982) (quoting *M.C. Mfg. Co. v. Tex. Foundries, Inc.*, 517 F.2d 1059, 1065 (5th Cir. 1975)); *see also* 15 U.S.C. § 13(a) (referring to discrimination "between different purchasers"). "[A] sale at one price plus

5

either an offer to sell at a higher price or a refusal to sell at any price is generally thought not to violate the [RPA]." *Id*.

Ziegler argues that, because SCTT did not accept the proposed "parts dealer" agreement containing higher prices, the proposal amounted to a mere "offer to sell at a higher price" and is inactionable under the RPA because it fails to satisfy the two-purchaser rule. *See* "Ziegler's Memorandum of Law in Support of the Motion" ("Ziegler Brief") (docket no. 9-1) at 11. SCTT resists Ziegler's argument by pointing to an exception to the two-purchaser rule that originated in *American Can Co. v. Bruce's Juices*, 187 F.2d 919 (5th Cir. 1951) ("*Bruce's Juices II*"). *See* "Memorandum of Authorities in Support of Resistance" ("SCTT Brief") (docket no. 14-1) at 9-10. In *Bruce's Juices II*, the Fifth Circuit held that a plaintiff may satisfy the two-purchaser requirement even if it did not in fact purchase goods at a disfavored price if "its failure to do so was directly attributable to defendant's own discriminatory practice." *Bruce's Juices II*, 187 F.2d at 924. Numerous courts have soundly rejected the *Bruce's Juices II* exception. *See, e.g.*, *Maier-Schule GMC, Inc. v. Gen. Motors Corp.*, 780 F. Supp. 984, 990 (W.D.N.Y. 1991) ("[C]ourts have rejected the claim that the [RPA's] purchaser requirement is inapplicable where the plaintiff's failure to purchase the relevant commodity allegedly stems from a defendant's discriminatory conduct."); *Gillette Tire Jobbers of La., Inc. v. Appliance Indus., Inc.*, 596 F. Supp. 1277, 1278 (E.D. La. 1984) (recognizing that *Bruce's Juices II* "has been severely criticized and seems to be in direct conflict with the line of cases which hold that a seller has the right to refuse to sell to any prospective customer"); *Stevens v. Zenith Distrib. Corp. of Kan.*, 568 F. Supp. 1200, 1201 (W.D. Mo. 1983) (calling *Bruce's Juices II* "an aberration"); *Chatham Brass Co., Inc. v. Honeywell Inc.*, 512 F. Supp. 108, 113-14 (S.D.N.Y. 1981) ("Allegations claiming discrimination between the price paid in an actual sale and the price quoted in an offer do not satisfy the statutory requirement that two 'purchases' occur, even though a plaintiff alleges that its failure to

6

buy from defendant and thus to create a second sale was directly attributable to defendant's discriminatory practice in offering to sell at an unfavorably high price." (citations omitted)); *Republic Packaging Corp. v. Haveg Indus., Inc.*, 406 F. Supp. 379, 381 (N.D. Ill. 1976) (stating that *Bruce's Juices II* "appears not to be the law in this Circuit" and "is inconsistent with the plain statutory language requiring consummated transactions" (citing *Chi. Seating Co. v. S. Karpen & Bros.*, 177 F.2d 863 (7th Cir. 1949))).

Beyond the *Bruce's Juices II* exception, other courts have carved out additional exceptions to the two-purchaser rule. For example, some cases have held "that previous purchases can be used to establish 'purchase' status for a claim under the RPA." *Data Capture Sols.-Repair & Remktg. v. Symbol Techs., Inc.*, 520 F. Supp. 2d 343, 348 (D. Conn. 2007) (compiling cases adhering to this exception in certain contexts). Other cases have found discriminatory offers made within the scope of a preexisting contractual relationship to satisfy the purchase requirement. *See, e.g.*, *Harper Plastics, Inc. v. Amoco Chems. Corp.*, 617 F.2d 468, 471 (7th Cir. 1980) (interpreting § 13(e) of the RPA: "A complaining party may become a 'purchaser' within the meaning of [§ 13(e)] solely by entering into a contract for the purchase of goods for resale."); *En Vogue v. UK Optical Ltd.*, 843 F. Supp. 838, 846 (E.D.N.Y. 1994) (holding that, because "the parties [had] a contractual relationship that . . . contemplated a completed transaction of minimum purchases . . . . [the plaintiff] was a purchaser within the meaning of [the RPA], and [could] rightfully allege a cause of action for price discrimination, even if there was no actual sale" (citing *Harper Plastics*, 617 F.2d at 471)); *J.W. Burress, Inc. v. JLG Indus., Inc.*, 491 F. Supp. 15, 18 (W.D. Va. 1980) ("[T]here must be a contract. It is sufficient that the contract be merely executory; actual delivery and payment are not essential to a 'purchase' for [RPA] purposes. But legally enforceable commitments must be in existence." (internal citations omitted)); *Aluminum Co. of Am. v. Tandet*, 235 F. Supp. 111, 114 (D. Conn. 1964) (holding that, where the plaintiff and defendant were "parties

to a contract for sale of specified goods . . . . they became the 'seller and the 'buyer.' The transaction on paper was complete; legal relations became operative.").[3]

Despite the various exceptions in other jurisdictions, in *Reeder-Simco GMC, Inc. v. Volvo GM Heavy Truck Corp.*, the Eighth Circuit implicitly rejected any suggestion that a plaintiff may satisfy the two-purchaser rule without actually purchasing a commodity at a discriminatory price. *See Reeder-Simco GMC, Inc. v. Volvo GM Heavy Truck Corp.*, 374 F.3d 701, 708-09 (8th Cir. 2004) ("*Reeder-Simco I*"), *rev'd on other grounds*, *Reeder-Simco II*, 546 U.S. 164 (2006). In *Reeder-Simco I*, the plaintiff proved three types of purported price discrimination by the defendant: (1) the defendant extended unfavorable offers to the plaintiff as compared to other favored competitors, where the plaintiff and the favored competitors directly competed for the same customer accounts (head-to-head scenarios)—resulting in the plaintiff losing customers to the favored competitor and consummating no agreement with the defendant, *see id.* at 705; (2) the defendant extended unfavorable offers to the plaintiff as compared to offers made to other favored competitors bidding for different customer accounts, where both the plaintiff and the favored competitors secured their respective bids (contemporaneous-sales scenarios)—resulting in the plaintiff gaining customers and consummating agreements with the defendant, but realizing less profit than the favored competitors, *see id.* at 705-06; and (3) the defendant extended unfavorable offers to the plaintiff as compared to offers made to other favored competitors bidding for different customer accounts, where the plaintiff did not secure its bids but the favored competitors secured their bids (lost-sales scenarios)—resulting in the

---

[3] It is worth noting that, unlike the line of cases propounding this exception, SCTT does not allege that Ziegler made a discriminatory price offer within the scope of the preexisting Agreement, but instead alleges that Ziegler made a discriminatory price offer by proposing an entirely new contract that SCTT did not accept. Therefore, even if such exception was the law of the Eighth Circuit, the court is skeptical that it would apply to the instant case.

8

plaintiff failing to gain customers that it might otherwise have gained and consummating no agreement with the defendant, *see id.* at 706-07. The Eighth Circuit held that the head-to-head and lost-sales scenarios could not sustain a jury verdict in favor of the plaintiff because, in these scenarios, the plaintiff "did not actually purchase" from the defendant. *Id.* at 708. According to the Eighth Circuit, despite the purported discriminatory offers from the defendant, "mere offers to sell do not violate the RPA." *Id.* In so holding, the Eighth Circuit expressly aligned itself with the jurisdictions rejecting *Bruce's Juices II*. *See id.* at 708-09 (stating that its holding "is consistent with the conclusion of many courts" and citing *Bruce's Juices II* as representative of the opposing minority view). The court ultimately found that contemporaneous-sales scenarios sufficed under the RPA because, in such scenarios, the plaintiff and a favored competitor "actually purchased" from the defendant, albeit not simultaneously. *Id.* at 709.[4] Based on the Eighth Circuit's analysis and holdings in *Reeder-Simco I*, the court views the RPA as requiring a plaintiff to actually purchase a commodity at a purportedly discriminatory price to state a claim for price discrimination. Merely receiving a discriminatory price offer will not suffice.

Because the Petition does not allege that SCTT actually purchased parts at the purportedly discriminatory prices included in the proposed "parts dealer" agreement, it does not sufficiently allege a claim under the RPA. Accordingly, the court shall grant the

---

[4] The Supreme Court vacated the Eighth Circuit's conclusion that contemporaneous-sales scenarios satisfy the RPA. *See Reeder-Simco II*, 546 U.S. at 178 (referring to such scenarios as "purchase-to-purchase comparisons"). However, the Supreme Court vacated the conclusion, not on grounds related to the two-purchaser rule, but because such scenarios rely on "mix-and-match" and "manipulable" comparisons of separate bidding processes for different customers. *Id.* at 178-79. Therefore, the court does not find *Reeder-Simco II* to impact the Eighth Circuit's reliance on the two-purchaser rule in *Reeder-Simco I*.

9

Motion with respect to SCTT's claim that Ziegler violated the RPA.[5]

## C. *State Law Claims*

Ziegler removed the Petition to the court based on the court's original federal question jurisdiction over the RPA claim alleged in Count 2 and its supplemental jurisdiction over the remaining state law claims in Counts 1 and 3.[6] The court has supplemental jurisdiction over these state law claims because they are so related to SCTT's RPA claim that they form part of the same case or controversy. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."). The court may decline to exercise supplemental jurisdiction over SCTT's state law claims if it "has dismissed all claims over which it has original

---

[5] Because the Petition fails to state a claim on these grounds, the court shall not address whether SCTT sufficiently pled competitive injury.

[6] The Petition alleges that SCTT is a corporation organized and existing within the State of South Dakota with its principal place of business in the State of Iowa, and operating as a subsidiary of a South Dakota corporation headquartered in South Dakota. Petition ¶ 1. The Petition alleges that Ziegler is a Minnesota corporation with its principal place of business in the state of Minnesota. Petition ¶ 2. The Petition does not, however, allege on its face any particular amount in controversy to support original diversity jurisdiction. *See* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between [diverse parties.]"). Further, Ziegler's Notice of Removal is based solely on federal question and supplemental jurisdiction, without any mention of diversity jurisdiction. *See generally* Notice of Removal (docket no. 2). Additionally, the Notice of Removal does not include any statement of facts demonstrating the jurisdictional requirements for diversity jurisdiction. *Id.* Therefore, the court cannot conclude that original diversity jurisdiction exists over the state law claims and considers such claims based solely on supplemental jurisdiction. *See* 28 U.S.C. § 1446(c); LR 81(f).

jurisdiction." 28 U.S.C. § 1367(c)(3). Having dismissed the claims over which it has original jurisdiction, the court has "broad discretion" to determine whether to exercise supplemental jurisdiction over any remaining state law claims. *Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1141 (8th Cir. 2014). "[T]he balance of interests usually will point toward declining to exercise jurisdiction over the remaining state law claims." *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1017 (8th Cir. 2015) (quoting In re *Canadian Import Antitrust Litig.*, 470 F.3d 785, 792 (8th Cir. 2006)).

As discussed above, the court shall dismiss SCTT's RPA claim, which is the only claim over which the court has original jurisdiction. As to the remaining state law claims, the court observes that the case is still in its early stages, there has been no substantial resources thus far expended by the court and interpretation of Iowa's franchise law is a largely unsettled area of state law. These factors all weigh in favor of declining jurisdiction over the state law claims and remanding them to state court. *See Thomas*, 743 F.3d at 1141. Therefore, the court shall remand SCTT's state law claims to the Iowa District Court for Woodbury County. Accordingly, the court shall deny the Motion with respect to Ziegler's argument that the state law claims should be dismissed with prejudice.

## V. CONCLUSION

In light of the foregoing, the court **ORDERS** as follows:

(1) The Motion (docket no. 9) is **GRANTED IN PART AND DENIED IN PART**.

(2) The RPA claim contained in the Petition (docket no. 3) is **DISMISSED WITH PREJUDICE**.

(3) The state law claims alleging breach of good faith and fair dealing and violation of Iowa franchise law are **REMANDED** to the Iowa District Court for Woodbury County.

11

The Clerk of Court is **DIRECTED** to **CLOSE THIS CASE**.

**IT IS SO ORDERED.**

**DATED** this 5th day of December, 2016.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA